**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| LEI YANG,<br><br>*Plaintiff*,<br><br>v.<br><br>W-E PHILADELPHIA FUND II, LLC, *et al.*,<br><br>*Defendants*. | No. 2:25-cv-05656 |

## OPINION

This opinion addresses the cross-motions for summary judgment filed by Plaintiff and Defendants. *See* Defendants' Motion for Summary Judgment ("Defendants' Motion") (Dkt. No. 20-4); Plaintiff's Cross-Motion for Partial Summary Judgment ("Plaintiff's Motion") (Dkt. No. 21). For the reasons that follow, the Court grants Defendants' Motion and denies Plaintiff's Motion.

### I. BACKGROUND

Plaintiff Lei Yang "executed a Subscription Agreement to invest in W-E Philadelphia Fund II, LLC under the EB-5 Immigrant Investor Program." Joint Statement of Undisputed Facts (Dkt. No. 20) at ¶ 1 (citations omitted). "Defendant W-E Philadelphia Fund II, LLC ('Fund' [or 'Company']) is a Delaware limited liability company organized for the purpose of making an EB-5 qualifying investment through (the 'Loan') to Chestlen Development, LP ( … 'Borrower') to finance a portion of the costs of the planned construction, stabilization and ongoing operations" of a hotel in Philadelphia ("Project"). *Id.* at ¶ 2 (citations omitted). "Defendant W-E Philadelphia Fund Manager, LLC ('Manager') served as the Manager of the Fund pursuant to the

Operating Agreement." *Id.* at ¶ 3 (citations omitted).

The EB-5 Program is administered by the U.S. Citizenship and Immigration Services ("USCIS"), and "permits noncitizens to apply for permanent residence in the United States by investing in approved commercial enterprises that are based on proposals for promoting economic growth." *Liu v. Sec. & Exch. Comm'n*, 591 U.S. 71, 77 (2020) (citation and quotation marks omitted).

Plaintiff executed the Subscription Agreement with the Fund in 2016. Joint Statement at ¶ 4. Plaintiff then "invested $500,000 in capital together with a $50,000 administrative fee pursuant to the Subscription Agreement." *Id.* at ¶ 6 (citation omitted). The express purpose of her contribution was to qualify as an investment under the EB-5 Program. *Id.* at ¶ 7 (citations omitted).

The Loan that the Fund gave to the Project was "subordinate to multiple senior lenders"—a fact expressly disclosed—and "was intended to be secured by a fifth-priority lien." *Id.* at ¶¶ 9–10 (citations omitted). There was also an "Intercreditor Agreement governing enforcement of its loan rights." *Id.* at ¶ 11 (citation omitted).

Importantly for this matter, the Fund's Operating Agreement provides that "if an investor's I-526 Petition is denied after the Subscription Holdback Account has been depleted, 'the Company *shall request* that the Borrower repay the Capital Contribution to the Company within 30 business days of receipt of USCIS notice that the Subscriber's I-526 petition has been denied by the USCIS.'" *Id.* at ¶ 12 (emphasis added) (citations omitted).[1] The Subscription Agreement contains the same

[1] "For noncitizens seeking an EB-5 visa, the first step in the application process is to file with USCIS a petition, called a Form I-526, for classification as an approved investor." *Da Costa v. Immigr. Inv. Program Off.*, 80 F.4th 330, 336 (D.C. Cir. 2023) (citation omitted).

provision. *Id.* at ¶ 13 (citations omitted). Under the Agreements, the Fund "will return the investor's capital contribution within thirty (30) days *after receiving repayment from the Borrower*." *Id.* at ¶ 14 (emphasis added) (citations omitted).

Plaintiff filed her Form I-526 petition, but it was denied by USCIS. *Id.* at ¶¶ 18–19 (citations omitted). The denial "was based upon USCIS's determination regarding Plaintiff's lack of evidence of the source and lawful nature of her capital contribution." *Id.* at ¶ 20 (citations omitted). Plaintiff subsequently requested return of her investment. *Id.* at ¶ 21.

In response, Defendants told Plaintiff there were no funds in the Subscription Holdback Account, meaning "the contractual repayment mechanism shifted to the Borrower repayment provisions contained in the governing agreements." *Id.* at ¶¶ 22–23 (citations omitted). Those provisions required the Fund to "request repayment" from the Borrower. *Id.* at ¶ 24 (citations omitted). Defendants "allege they requested repayment from the Borrower." *Id.* at ¶ 25 (citation omitted). The Borrower, however, did not repay the Fund, and so Defendants did not return Plaintiff's $500,000 capital contribution. *Id.* at ¶¶ 34–35 (citation omitted). Defendants have not returned Plaintiff's administrative fee either. *Id.* at ¶ 36.

Defendants allege "the Subscription Holdback Account had been fully depleted before Plaintiff's I-526 Petition was denied[;]" "the Borrower was unable to repay Plaintiff's Capital Contribution because the Loan proceeds had been used in connection with the Project[;]" "the Project experienced delays, cost overruns, and construction litigation[;]" "the Project did not generate sufficient revenue to satisfy all indebtedness." *Id.* at ¶¶ 37–40 (citations omitted).

Plaintiff initiated this action by filing a *pro se* Complaint asserting claims for "(a) Breach of Contract; (b) Breach of Fiduciary Duty; (c) Breach of the Implied Covenant of Good Faith and Fair Dealing; (d) Unjust Enrichment; and (e) Injunctive Relief – Preliminary Injunction and Permanent Injunction." *Id.* at ¶ 56 (citation omitted). Defendants denied liability and filed a Counterclaim seeking declaratory relief. *Id.* at ¶ 57 (citation omitted). Specifically, "Defendants' Counterclaim seeks a declaration that Defendants have no obligation to return Plaintiff's Capital Contribution or Administrative Fee." *Id.* at ¶ 58 (citation omitted). Plaintiff maintains that "Defendants failed to perform the contractual obligations required before relying upon the Borrower's alleged inability to repay Plaintiff's investment." *Id.* at ¶ 60 (citation omitted).

## II. Legal Standard

When considering a motion for summary judgment, courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Courts must "view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Savane v. Sec'y United States Dep't of Homeland Sec.*, 164 F.4th 93, 98 (3d Cir. 2026). A disputed fact is "material" only if it "might affect the outcome of the suit under the governing law[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The dispute is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The "mere existence of a scintilla of evidence" favoring the position of the party opposing the motion is insufficient. *Id.* at 252. Along the same lines, the

nonmoving party "cannot simply reassert factually unsupported allegations contained in its pleadings[.]" *Williams v. Borough of W. Chester, Pa.*, 891 F.2d 458, 460 (3d Cir. 1989) (citation omitted).

## III. Analysis

### A. Defendants' Motion for Summary Judgment

Defendants ask this Court to grant judgment in their favor on Plaintiff's claims and on their "counterclaim for declaratory relief that Plaintiff is not entitled to her capital contribution or administrative fee." Memorandum in Support of Defendants' Motion ("Defendants' Memo") (Dkt. No. 20-5) at 25.

Defendants' Motion presents three issues: whether Defendants are entitled to declaratory relief regarding the return of Plaintiff's capital contribution of $500,000; whether Defendants are entitled to declaratory relief regarding the return of Plaintiff's administrative fee of $50,000; and whether Defendants are entitled to judgment as a matter of law regarding Plaintiff's claims.

As a threshold matter, the Court notes Defendants have repeatedly clarified that their position is that Plaintiff "is not entitled to a return of her capital contribution *at this time*." *Id.* at 18 n.3 (emphasis added). Defendants maintain "Plaintiff remains a member of the Fund." *Id.* (citation omitted). Defendants further assert that if "the financial position of the Fund change[s] in the future because the Borrower [ ] makes any repayment to the Fund, Plaintiff may be entitled to a return of her capital contribution, in whole or in part, at that time." *Id.*; *see also* Defendants' Response in Opposition to Plaintiff's Motion ("Defendants' Response") (Dkt. No. 22) at 2 ("Defendants seek a declaration that they have no *present* obligation to return

her capital contribution, not that her right to ultimate repayment has been extinguished." (emphasis in original)). Throughout their Response, Defendants stress that they only seek a declaration regarding their *present* obligations.

This Court adopts that understanding, and any relief granted to Defendants here is subject to that limitation. Plaintiff may be contractually entitled to relief in the future, and the Court's disposition here does not preclude Plaintiff from seeking such relief if circumstances change.

1. <u>The Capital Contribution</u>

The Court first addresses the capital contribution. The parties agree about the way the contractual refund mechanism functions. It "contains two mandatory promises: after an I-526 denial and depletion of the holdback account, the Fund 'shall request' that the Borrower repay the affected investor's Capital Contribution; and after the Fund receives that repayment, it 'will return' the Capital Contribution to the investor within thirty days." Plaintiff's Motion at 3 (citing Joint Statement at ¶¶ 12–14, 23–25). The parties further agree that the "Subscription Holdback Account contained no funds[.]" Joint Statement at ¶ 23. Therefore, it fell to the Fund to request repayment from the Borrower.

Defendants "allege they requested repayment from the Borrower." *Id.* at ¶ 25 (citation omitted). Plaintiff challenges this claim. *See* Plaintiff's Motion at 6, 10. At first blush, this may seem like enough to preclude summary judgment. However, this dispute is not genuine, and it does not involve a material fact.

First, the fact in question is not ultimately material. Plaintiff concedes that the "Project encountered delays, cost overruns, litigation, and insufficient revenue."

*Id.* at 6 (citation omitted). Plaintiff does not assert that the Borrower presently has sufficient funds to satisfy the senior loans and return Plaintiff's investment. Rather, Plaintiff merely contends that "[i]f and when the Borrower repays the corresponding amount to the Fund, the Fund must transmit that amount to Plaintiff within thirty days." *Id.* at 7–8 (citation omitted). She maintains she is "entitled to partial summary judgment denying the Counterclaim's broader formulation and declaring the continuing duty to transmit any repayment received." *Id.* at 8; *see also id.* at 9 ("[T]he Fund may not treat the Borrower's initial inability to pay as a permanent discharge of that duty."). As demonstrated above, Defendants do not dispute this.

Therefore, under these circumstances, whether the Fund requested repayment from the Borrower does not affect the Fund's present obligation to return Plaintiff's capital contribution. There is no dispute regarding the Fund's present ability to repay the investment, and there is no dispute regarding the Fund's continuing obligations with respect to repayment. This means that whether the request was made is not a fact that "might affect the outcome of the suit under the governing law[.]" *See Anderson*, 477 U.S. at 248. It is consequently not a material fact.

Second, and perhaps more importantly, this is not a *genuine* dispute of material fact. In an affidavit, Jared Wallace, an "authorized representative" of the Fund Manager, stated that "[a]fter confirming that there were not funds available in the Subscription Holdback Account for the Fund, [he] requested that [the] Borrower repay the capital contribution of Plaintiff due to the denial of her petition." Affidavit of Jared Wallace (Dkt. No. 20-6) at ¶¶ 2, 24. He further stated that the "Borrower was unable to repay any portion of the Loan that the Fund made to the Borrower."

*Id.* at ¶ 25.

Plaintiff does not point to any facts that contradict this account. She seemingly has not deposed Wallace. After discovery, the extent of her argument is that Wallace "does not state the date, manner, words, recipient, authority of the recipient, or response to that request; [and] no contemporaneous writing exists[.]" Plaintiff's Motion at 4 (citation omitted).

This is not enough to establish a genuine dispute. As the nonmoving party, Plaintiff "must adduce more than a mere scintilla of evidence in [her] favor and cannot simply reassert factually unsupported allegations contained in [her] pleadings." *See Wiest v. Tyco Elecs. Corp.*, 812 F.3d 319, 322 (3d Cir. 2016). She has not done so here. Accordingly, Defendants are entitled to declaratory relief concerning their present obligation to return the capital contribution.

2. The Administrative Fee

The Court now turns to the return of the administrative fee. Again, there is much about which the parties agree: "The agreements state that the Manager generally will repay the $50,000 Administrative Fee after an I-526 denial but may retain all or part of that fee, in its sole discretion, when denial results from specified conduct, including failure to timely provide satisfactory lawful-source evidence." Plaintiff's Motion at 11 (citation omitted); *see also* Defendants' Memo at 19 (explaining "[b]oth the Subscription Agreement and the Operating Agreement provide that 'if the Member fails to obtain approval of his or her I-526 Petition for reasons of … *failure to provide timely to the Manager and/or the USCIS satisfactory evidence regarding the source and lawful nature of that Member's Capital*

*Contribution* … the Manager reserves the right to retain all or any portion of such Member's Administrative Fee, *in the Manager's sole discretion*." (some emphasis removed) (quoting Joint Statement Ex. A, Ex. 1 & Joint Statement Ex. B, Ex. 3, Subscription Agreement, at 5; Joint Statement Ex. A, Ex. 2 & Joint Statement Ex. B, Ex. 1, Operating Agreement, at 7–8)).

Here, USCIS denied Plaintiff's Form I-526 petition because of "USCIS's determination regarding Plaintiff's lack of evidence of the source and lawful nature of her capital contribution." Joint Statement at ¶¶ 19–20 (citations omitted). Under the agreements, therefore, it was within the Manager's sole discretion to retain the administrative fee.

Plaintiff does not dispute this. Rather, she argues that "the existence of discretion is not itself proof that the Manager actually exercised it, when it did so, or that it acted in good faith." Plaintiff's Motion at 11. Plaintiff emphasizes that Delaware law—which the parties agree applies to the agreements, *see* Joint Statement at ¶ 2; Defendants' Memo at 16—requires the parties to act in good faith. Plaintiff's Motion at 11 ("Delaware's implied covenant requires parties to refrain from arbitrary or unreasonable conduct that prevents the counterparty from receiving the fruits of the bargain." (citation omitted)).

She also emphasizes that there was a conflict of interest here: The Manager and Borrower were beneficially owned by the same principal owner. Plaintiff's Motion at 6, 12 (citation omitted). Yet it is undisputed that this conflict was disclosed before Plaintiff entered into the agreements. Joint Statement at ¶¶ 27–29 (The memorandum offered to Plaintiff before entering into the agreements "disclosed that

the Manager of the Fund and the Borrower were beneficially owned by the same principal owner." (citations omitted)).

Even with the implied covenant, however, Plaintiff has still failed to identify evidence creating a *genuine* dispute of material fact on this point. The Court reaches this conclusion because Plaintiff has not provided any concrete facts indicating that Defendants failed to exercise good faith, or that the conflict of interest resulted in any breach of the implied covenant.

Instead, Plaintiff merely stresses that Defendants have not positively demonstrated their exercise of good faith. Plaintiff's argument is insufficient. As highlighted above, to defeat a motion for summary judgment, the nonmoving party "cannot simply reassert factually unsupported allegations contained in its pleadings[.]" *Williams*, 891 F.2d at 460 (citation omitted). Consequently, Defendants are entitled to declaratory relief concerning their obligation to return the administrative fee as well.

3. <u>Plaintiff's Claims</u>

Finally, the Court considers whether Defendants are entitled to judgment as a matter of law on Plaintiff's claims. Plaintiff asserts five different counts: Count I asserts a breach of written agreement, Count II asserts a breach of fiduciary duty, Count III asserts a breach of the implied covenant of good faith and fair dealing, Count IV asserts unjust enrichment, and Count V seeks a preliminary injunction and permanent injunction. Complaint (Dkt. No. 1) at 5–10.

As shown above, Defendants are entitled to declaratory relief as a matter of law concerning their present contractual obligations. For that reason, Plaintiff

cannot succeed on her breach of written agreement claim in Count I, and Defendants are entitled to summary judgment.

Likewise, without a path to success on the breach of written agreement claim, Plaintiff cannot succeed on her claims for breach of fiduciary duty (Count II) or for breach of the implied covenant of good faith and fair dealing (Count III) because these claims are duplicative. *See Nemec v. Shrader*, 991 A.2d 1120, 1129 (Del. 2010) ("It is a well-settled principle that where a dispute arises from obligations that are expressly addressed by contract, that dispute will be treated as a breach of contract claim. In that specific context, any fiduciary claims arising out of the same facts that underlie the contract obligations would be foreclosed as superfluous." (citations omitted)); *Edinburgh Holdings, Inc. v. Educ. Affiliates, Inc.*, No. CV 2017-0500-JRS, 2018 WL 2727542, at *9 (Del. Ch. June 6, 2018) ("The implied covenant is available only where the terms to be implied are missing from the contract; it cannot be invoked to override the express terms of a contract. Thus, if the contract at issue expressly addresses a particular matter, an implied covenant claim respecting that matter is duplicative and not viable." (citations omitted)).

Regarding Count IV, Plaintiff explains she "pleaded unjust enrichment in the alternative." Plaintiff's Motion at 13. Accordingly, she maintains that "[b]ecause all parties now agree that valid written agreements govern the refund dispute, the Court may treat Count IV as alternative and unnecessary rather than use it to dismiss the contract-based claims." *Id.* at 13–14 (citation omitted). This suffices to dispose of Count IV. *See iBio, Inc. v. Fraunhofer USA, Inc.*, No. CV 10256-VCF, 2020 WL 5745541, at *11 (Del. Ch. Sept. 25, 2020) (Unjust enrichment is "a theory of recovery

to remedy the absence of a formal contract." (citation omitted)).

Count V seeks preliminary and permanent injunctive relief. A party seeking a preliminary injunction must demonstrate it is "likely to succeed on the merits[.]" *Sec. & Exch. Comm'n v. Chappell*, 107 F.4th 114, 126 (3d Cir. 2024) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). The burden for a permanent injunction is even higher, and the party seeking the injunction must show "actual success on the merits[.]" *Gucci Am., Inc. v. Daffy's Inc.*, 354 F.3d 228, 236 (3d Cir. 2003) (citation omitted). For the reasons articulated above, Plaintiff has not established likely or actual success on the merits. Therefore, Count V cannot succeed, and Defendants are entitled to summary judgment on each of Plaintiff's claims.

**B. Plaintiff's Cross-Motion for Partial Summary Judgment**

Plaintiff's Cross-Motion for Partial Summary Judgment is narrow. It seeks summary judgment "against Defendants on their Counterclaim to the extent it seeks a categorical declaration that Defendants have no obligation to return Plaintiff's Capital Contribution or Administrative Fee." Plaintiff's Motion at 16. As discussed by this Court above, Defendants have not requested a *categorical* declaration, but merely a declaration about their *present* obligations. For this reason, Plaintiff's Motion lacks merit.[2]

In the alternative, Plaintiff requests relief under Federal Rule of Civil Procedure 56(g), which permits a court to "enter an order stating any material fact—

---

[2] Plaintiff filed her Motion on July 18, 2026, a day after the deadline given in this Court's Order following the virtual Rule 16 Conference at which Plaintiff failed to appear. *See* Order (Dkt. No. 18). Because Plaintiff's Motion lacks merit for the reasons articulated above, it is unnecessary to address the Motion's timeliness. However, Plaintiff's failure to request an extension of time before or after filing provides an alternative basis for rejecting the Motion. *See* Fed. R. Civ. P. 6(b).

including an item of damages or other relief—that is not genuinely in dispute and treating the fact as established in the case." Given the disposition of the parties' Motions, the Court declines to grant relief under Rule 56(g).

## IV. CONCLUSION

For the foregoing reasons, this Court grants Defendants' Motion and denies Plaintiff's Motion. An appropriate order follows.

DATED: November 13, 2026

BY THE COURT:

GAIL A. WEILHEIMER, J.